at all. Thank you. Thank you. May it please the Court. The amended complaint plausibly alleges that defendants violated... Sorry. Usually, we begin by telling... Sorry. Alan, don't go through the plaintiffs, Your Honor. Thanks. The amended complaint plausibly alleges that defendants violated the father's and the son's Fourth and Fourteenth Amendment rights, first through an extrajudicial pre-hearing removal, and then through nearly three years of unnecessary separation that followed. Can I ask you a question? Because in closing this case, first of all, those are really kind of two separate issues, and they're approached not entirely separately, but generally separately. One of the interesting things to me seems to be that on the first question of the removal and the timing of the family court, that's something that kind of a question that we face with some frequency. I didn't tell you, you're probably going to remind me that maybe the second case I ever wrote on many years ago was tenant-bound. It comes up from time to time, and there's a case law. The second one, about the two and a half years, strikes me as unusual, and one in which we don't have very much case law or experience, it seems to me. And therefore, there tends to be a lot of attention paid in the briefing to the first issue because there's a lot to talk about. And less paid to the second, even though to me two and a half years, roughly, is an extraordinary amount of time to remove a parent, to remove a child, a father, so they seem somewhat separate and different. But after all of that approach by us, I get to the fact that it's fast that we're talking about. I find it very difficult. I may be the only one. Reading the briefs, the excellent amicus or amici briefs, I find it hard to understand exactly what happened. Then it occurred to me at some strange time in the morning, of course it's hard for me. This is a motion to dismiss. We haven't even gotten to the factual part because that comes later in the proceedings. It sort of leaves me wondering why on earth we should be deciding the facts issues now, but really ought to go back and at least get to summary judgment and discovery in summary judgment before we try to make judgments like this. I'm happy to violently agree with you, Judge Sack. I agree. I mean, it's not just a motion to dismiss here. You have what I view as the unique oddity of the district court six months after motion to dismiss briefing closed, supplementing the record unilaterally with the family court filings that the district court ordered be filed on the docket and that the district court then considered throughout its opinion. The district court had the right to take judicial notice of these documents from the family court proceeding, right? For a very limited purpose, and that purpose was not observed. This is important. What is the limited purpose? The limited purpose for judicial notice is the fact that certain statements were made, the fact that the family court took particular action at particular points in time, but the district court's opinion goes far beyond that limited purpose. The district court uses the word legitimate six times in its opinion to essentially evaluate the bona fides of the— So I think what you're saying in a more roundabout way is that it was not proper to credit the allegations in the family court, only that they were said, alleged, or what was actually found. Is that correct? Absolutely correct. But tell me, how do we get around the—or how would you respond to the argument that they were integral to the complaint, right? Because you would at least concede that if they were, then that was appropriate to use them. So if they were integral, it's, again, appropriate to use them for limited purposes, which I don't think were observed here. I also — I'll answer your question, of course, but I also think even considering those allegations, the district court erred. But as for the integral to the complaint, I mean, some of the documents aren't referenced at all, either in the complaint or the briefing. The Children's Aid Society letter, which the district court relied on throughout, is nowhere mentioned and so can't be deemed integral. As for the other documents— Okay. So what do you think were the dispositive pieces of, quote-unquote, fact that you thought the district court erroneously took as true from the family court documents? So I think there's any number of them. Okay. Right. But the ones that you think— Yeah. —turned something. Sure. The ones that the district court seemed to credit most were, number one, that there were— No, no, no. The ones that the district court credited most that you think if they hadn't, we would be — you would be in a different posture. Sure. So the — what the district court viewed as legitimate questions about paternity seemed to infect the district court's opinion and I think caused some of the errors. And why is that? Because there is — what does — what does you being right on that do for the arguments that come later? So I don't think that the legitimacy of the paternity is relevant at all. The district court seemed to view the question about the father's paternity as justifying both the pre-hearing seizure and the post-deprivation three-year odyssey of removal. Okay. So you're saying that whether or not that was correct, whether or not K.W. was the father or not the father, has zero bearing on the pre-hearing? Correct. Who's responsible on that? And there's — absolutely. Lehrer v. Robinson, Stanley v. Illinois, decades-old Supreme Court case law, says that for constitutional purposes, questions about paternity are immaterial. So if there were legitimate questions about paternity, and of course the complaint alleges that there were not and that the defendants were aware that there were no questions about paternity, it would be immaterial to the Fourth and Fourteenth Amendment analysis here. So to answer your question directly, I mean, that's one — sorry, was I interrupting you? Okay. So to answer your question directly, I think that's one place where the district court credited the allegations and the extra complaint documents and erred in crediting them. Another one is the fact that the mother and father lived together, which is based on the fact that the address is replicated in the petition. That was crediting the truth of those allegations. Well, what about that part of your complaint where you say something to the effect of that it's unclear whether or not you could move somewhere else? The defendants failed to consider and allow K.W. to live in a different resident from the infant plaintiff's biological mother. So I don't think that the fair inference at the motion to dismiss stage was that they were residing at that — is that they were living together at that time. The fair inference is that to the extent that the defendants had concerns about the father's ability to keep the child safe from the mother, he should have been given the opportunity to address them. Wait a minute. You don't think it's fair to say that defendants failed and allow K.W. to live in a different resident from the infant's plaintiff's biological mother is not an indication that they lived together? No. I don't think so at all. There's no allegation in the complaint that they were living together. And the fact that that's alleged in the complaint I think is simply meant to address a concern by the defendants. Whether they were living together at the time and, more importantly, whether their cohabitation, if it was happening and it was not, posed an exigent threat to the child's life and limb justifying an emergency removal is a question for discovery. It's not a fair inference to draw from this complaint. The district court doesn't cite that, I don't believe, for its reasoning. It cites the fact that the petition, which was drafted by the defendants, gives the same address for the biological mother and the father. That's not enough at the motion to dismiss stage for the court to then credit as legitimate the concern that the father was unable to keep the child safe from the  Recall also that the biological mother here had prior findings of neglect against her other children, not abuse. The idea that the father was incapable of taking care of the child, this is a fit custodial parent. Okay. Well, so we're trying to figure out how to get the right answer here knowing that there's going to be different facts that come to us. I mean, you can imagine a scenario in which one parent was affirmatively abusing a child and the other parent wasn't. Are we, are you arguing that we should be in a position where we can't take action against, take action to protect a child? Absolutely not. And I think this court has drawn that line clearly in Tenenbaum and then again in Sutherland and a number of cases where it has clearly articulated the standard for both the substantive law and qualified immunity about when these pre-hearing judicial removals are justified. And the standard simply wasn't met here. We can talk about the post-deprivation procedural due process and Fourth Amendment claims, but as to the emergency removal, which is the one I think we're talking about first, there's nothing in the record that would suggest that the defendants had a concern about an exigent risk to the child's life and limb and that there was not time to obtain a judicial order effectuating the removal. Simply nothing in the record. The defendants barely addressed that claim in their briefing here. And what if we say that, what if we assume that Moody simply didn't have the means to perform a removal that day and that he scheduled the appointment the next day and the first available time? Would that change our analysis? You mean with respect to the difference in time between the 7th and the 8th? Yeah. There's nothing in the record to suggest that, of course. What he said on the 7th was, show up at ACS on the 8th, which the father did with the child in healthy condition. So there was no new information available to Moody in that time period. And if anything, at a motion to dismiss stage, the inference should be drawn that the father was taking care of the child during that time. The fact that he then effectuated the removal at the ACS appointment on the 8th says nothing about whether he had time to then go to family court and obtain an order for that removal. He could have done it on the 7th. He could have done it on the 8th before the hearing. Or he could have done it on the 8th without effectuating the emergency removal at the ACS office. He walked into family court hours later and got the order he wanted. Again, in our view, by misrepresenting and omitting critical facts in the petition. But there was nothing stopping him from getting an order effectuating the removal. And that's precisely the substance of the pre-hearing. So you would argue that there's no legal significance to the gap, the shortness of the gap? If anything, it supports us. Oh, as to the shortness of the gap? No, there's no legal significance. A seizure is a seizure. If it was a short period of time, then I think that counts against the defendant's argument that they were unable to obtain a court order. But for purposes of the Fourth Amendment analysis, it's up to a jury to decide precisely what damages or what consequence there is to effectuating that removal. The district court on remand in Sutherland said, and I think this addresses your concern as well about how you balance these issues when there are such precious stakes at issue. The district court said the risk of trauma to a child, of being separated from the only parent they know, even for a short period of time is outweighed by any countervailing considerations when you don't have bona fide exigent circumstances. That's precisely how the defendant should have calibrated their actions here. I'm happy to answer any other questions. I see I'm over and I have rebuttal time. Thanks, Your Honor. Thank you. Good morning, Your Honors. My name is Cheryl Sanford. I'm with the law firm of Black Marger and Sanford. I represent the city of New York and child protective service worker Moody. Judge Buchwald properly granted a motion to dismiss under 12b-6 in a detailed 47-page decision. She went over and beyond what she needed to state when the substance of the motion was that it was the statute of limitations issue, the only issue that the city wasn't moving on. This complaint was filed on October 18th, 2022. The seizure, which is the only act that is really the subject of this complaint, was on March 8th of 2017. In their papers, they now concede this isn't a false arrest. It's not a malicious prosecution where you need a favorable termination. The seizure occurred on March 8th of 2017. The judge's decision was correct. She went over and beyond the statute of limitations to get into the substantive issues, which led to the confusion why we're here today. Substantively, as the Court stated, the Court was permitted to take judicial notice of the claims that are integral to the allegations here. And counsel, under Rule 11, has an ethical obligation to make sure that the allegations that he asserts in his complaint are correct. And as Your Honor stated earlier, paragraph 45 of the complaint states that the defendants did- Excuse me, but this was not a Rule 11 motion. This is a motion to dismiss. Correct. But ordinarily, the district judge on a motion to dismiss has to accept the truth of the allegations of the complaint. I mean, it may turn out, getting back to where Judge Sack started this, who knows what the ultimate facts are. There hasn't been any discovery here. So maybe on summary judgment things might be different. But at the motion to dismiss stage, to incorporate into the- to find that the allegations of the complaint included factual statements made by parties in the family court proceedings seems to go beyond the scope of the complaint. Maybe there are things in the complaint that are not true, but does that mean that we should adjudicate the truth or falsity of those allegations at the time of motion to dismiss? We certainly don't normally do that. The court seemed to have a lot of issues about the omissions and misstatements in the complaint. Yeah. So the case law that we cited in our papers, it's Gold v. Bunge, 820 F3D 554, Second Circuit case of 2016 states that if the documents that the court is relying on undermines the legitimacy of the claims, the court can certainly look at that. So these family court proceedings are integral to the complaint. The court can take judicial notice of it, and the court can take into account the fact that it undermines the claims. And for the first seizure, there were two issues. Moody signed an affidavit that states the parents resided together. So now the claim is that Moody made factual misrepresentations to the court. And we know from Sutherland that it is not enough that they might be relying on false information. The complaint states, for a reason, that Moody did not consider whether they would allow him to move or go to another location. Then on April 6th of 2017, Judge Pearl signed off on this. So anything that happens after Judge Pearl agrees, listen, we're monitoring the father. We're making sure that the visitation is proper, that he has proper accommodations for where he's living. So there's a separation once the judge signs off on that. And the misrepresentations, like in Sutherland, the child was alleged to have, like, swallowed paint, but she wasn't living with the father. The affidavit provided in that case said, listen. Well, we're in a bit of a tough spot, right, because you're arguing that the family court documents are integral, but their argument is that it was that the whole process in the family court was done in an improper way. So how are we squaring that circle at this posture? Well, I'm not sure what exactly was improper. What Moody signed was that under the Family Court Act 1035d, the father has certain rights. He could request a best interest hearing. He has the right to notice of what's taking place. Everything that was supposed to happen did happen. The father wasn't a part of any of this, was he? Correct. But under 1035d of the Family Court Act, the father has the right to notice of the proceedings. He has the right to request a best interest hearing of what's in the best interest of the child. Well, right, but so you're saying he could have done those things, but doesn't he also have a presumption as a parent of certain rights to be proven unfit first? Well, I don't think there's any evidence that it was established that that's why the affidavit said alleged father. The paternity was not established until August of 2017. So what is the city supposed to do? Say, okay, sir, I understand that you took your child home from the hospital and you say this is your child, but just take him and run off to another state. Like, the city would be – this is why there's qualified immunity. Child services has a difficult job here. They can't just release a child, and then clearly a judge stepped in. This went on for two and a half years because judges, two different judges, family court judges, stepped in and said, no, you can't – and this is what the court was talking about in hindsight. But judges were signing off on these visitations. They said – As those matters, I agree that the real tough issues here are one of them is sexual limitations and the other is qualified immunity. And my question, though, is whether we should be – whether the court should be deciding now or after their statute. Well, I understand the issue about 12b-6 reliance on the pleadings as opposed to converting it for a motion for summary judgment, which didn't happen here. But on the statute of limitation issue, all of the claims could have been dismissed. Judge Buchwald went over and beyond what she needed to do. And then in their papers now, they said, yes, we understand this is not a false arrest claim where a favorable termination might impact the statute of limitations. The act was the seizure. The child was seized on March 8th. So all the claims are time barred. It's more than three years, is that it? Yes. Period. Yes. So all of the claims at the time of the motion practice, though, they couched it as a false arrest claim. Now they're agreeing this is a seizure. So if it's a seizure, the act was March 8th of 2017. The complaint was filed on October 18th of 2022. So all of the claims are time barred if you're agreeing that this is a seizure. It wasn't a false arrest. And the judge just went over and beyond addressing the substantive issues. Unless the Court has any other questions, I'll turn it over to my colleague. May it please the Court. I'm Patricia Rooney. I represent Children's Aid Society and Brian Gomez. I think my colleague made some excellent points. My point is that, and I agree with what she said, that this was a statute of limitation. We were well beyond the statute of limitations. This judge went above and beyond what she had to do. Furthermore, with respect to us, we're a foster care agency. All right? The complaint of the act was the removal of the child. We didn't do that. That wasn't us. Okay? We didn't come in until afterwards. We're mentioned, I don't know, 50-some-odd times in terms of the amounts of time we're mentioned. There's nothing really mentioned of us in the complaint other than that we exist. I don't see that we had any real involvement. Quite frankly, we were shocked when we were dragged into this. And also from a policy standpoint, I think if you decide this, you know, and to include foster care agencies, I think there's going to be a problem. Foster care agents will be very reticent to get involved in such cases. I don't really have a lot to add other than statute of limitations. Also, I have one other thing, one other point. You have to act under color of state law, and we didn't act, let alone under color of state law. But my understanding of the role that the appellant is saying that you have in this case is going to issues of damages, not liability, right? That the process was more difficult. You had all these hoops that you made him jump through. But it's not, they're not arguing it to be a separate procedural due process claim here. Well, we are in that fifth cause of the complaint as a procedural due process claim. And in order to have that, it has to be some sort of act. And we affirmantly didn't do anything when it came to the removal. We didn't remove the child. So I'm not really sure why we would have violated his procedural due process rights. If you have other questions, I'm really happy to answer them, Your Honor. The color of state law, there is a decision of this court. It's old, but it's a decision of this court which says, I think, that agencies like yours are acting under color of law because of the nature of the work that you do in sort of managing the foster care. Are you asking us to overrule that? No. But even if that were true, Your Honor, we didn't act. The act is the removal. We didn't remove. Well, then what did you do? After the child was removed, we were called in and we took the child. After the removal, we did not remove that child. But you did advocate for K.A.'s continued removal. Is that correct? And kept him separated? We filed reports. And usually, for the most part, they were quite complimentary, although we were concerned that the mother, who was at that time, as we believe, was living in the same house as the father, was not honored. Do we know whether they were living in the same house or not? For certain, we do not. That's my kind of problem. Yeah, it is. I agree. We did what we had to do. I think we took the child. We had a duty to take care of the child, to place him with a good, faster family. We did all that. And we reported accurately throughout the proceeding on what was happening. I mean, he was asked not to have the mother have any contact. We saw the mother having contact with the child. They spent the night in the hotel. The mother was there. There were pictures of the mother and the child at the pool. Clearly, K.W., the father, was not really understanding the gravity of this situation, and he was not following court orders. We did what we had to do to make the child safe. K.W. was not following court orders? Well, the court told him not to have any contact with the mother. Okay. But he was not a part of it. They told him. There's an order by the court to him, you're saying. I believe, and I'm not sure, Your Honor, so maybe I shouldn't speak. I'm not sure.  Please, everybody does, Your Honor. Well, you know, I mean, you know, I don't know. It's the law professor in me. What can I tell you? I mean, he was cautioned not to have contact with the mother. Certainly, he would have been cautioned by his visits at the agency. It was understood that he was not to have contact. Did anyone put it in writing? I don't know. Okay. Thank you. Thank you, Your Honor. Can you make sure you clarify something? Your front note three of your opening brief, the sole claims and appeal are against Moody Children's Aid Society and Brian Gomez. Is that right? So you have no appeal of any claims against New York City? Correct. So it counts one, five, and nine, and that's against the defendant specified. I want to start with the statute of limitations. There's no argument that the child's claims are time barred. They are told until majority, and so both his fourth and fourteenth due process claims, no question as to the timeliness. The only question is as to the timeliness of the procedural due process claim as to the father, and we argue that that's a continuing violation, and I think that goes to Counsel for Children's Aid Society's arguments. What we allege in the complaint is that they violated the father's and the child's reciprocal right to due process by failing to provide Including the Children's Aid Society? Correct. I really want to focus on that. Sure. What is the gist of the procedural due process claim against the Children's Aid Society? Sure. I think the relevant element Assuming they're a state actor, that's a different question. Yeah, and I think Your Honor is exactly right that there's well-settled case law on that. So the allegations, it's sort of a two-part theory. The first is that my client was entitled to notice an opportunity of the charges against them. Southerland says precisely that. The court then quoted that precise language in the most factually analogous case, which is Schwimmer. Okay, but Children's Aid Society wasn't the one that was supposed to do that, right? That was the city. Children's Aid Society was working with the city in connection with the family court proceedings. My client was never named as a respondent in the family court proceedings. He was never put Okay, okay. I think we've heard that. What we're trying to figure out is how much are you laying at Children's Aid Society for that problem? The problem with the Children's Aid Society work is that they did not, to the extent that they were participating in the process, and the allegations in the complaint are paragraphs 70 to 90 and then 108 to 111. For nearly three years, they imposed obligations on him, on the father, to meet all sorts of requirements that required him, in the absence of notice and an opportunity to be heard on the charges against him, required him to prove his fitness as a father. That is exactly what Troxell v. Granville said. Does that go to damages or liability? I think it's a liability question. It certainly goes to damages. But the form of the procedural due process violation here was keeping the child separate, and Children's Aid Society was an active participant in that process, keeping the child separate from his father for nearly three years without providing him a concrete procedural avenue to contest the charges against him and imposing a shifting set of requirements on him to demonstrate his fitness as a parent. Okay. So you would argue then that we only need to look at them for the post-order? Absolutely. Okay. Absolutely. Yeah. So with respect to the removal itself, that is entirely on Moody and the city. And so there's no question about Children's Aid Society's involvement in the removal. I'm sorry. Moody and the city, and you're not appealing against the city. Correct. So now we're all about Moody on pre-removal. Correct. And also with respect to the Fourth Amendment claim for the removal. And I think the qualified immunity analysis, I agree with you that there's lots of facts to come in here, but at least we're plausibly alleging to the extent it's our burden at all, it's defendants' burden on qualified immunity. There's clearly established case law going back to Tenenbaum and Sutherland and Chiappi and Schwimmer saying precisely what the city's obligations are if they want to effectuate a pre-hearing emergency removal and if they want to remove a child from his custodial fit parent's custody, including for the duration of three years. So all of those things are established. I think – I know my time is up, so I'm happy to sit, but I certainly have more to say. I think we're good. Thank you. Okay. Thank you very much. This was helpfully argued. Thank you.